

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only



FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

MAR 1 9 2012

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**Federal Trade Commission,**

       Plaintiff,

       v.

**Sameer Lakhany,**
    an individual;

**The Credit Shop, LLC,**
    a limited liability company;

**Fidelity Legal Services LLC,**
    a limited liability company;

**Titanium Realty, Inc.,**
    a corporation;

**Precision Law Center, Inc.,**
    a corporation;

**Precision Law Center LLC,**
    a limited liability company;

       Defendants.

Case No. SACV12-0337-CJC(JPRx)

~~[PROPOSED]~~
**PRELIMINARY INJUNCTION ORDER WITH ASSET FREEZE AND OTHER EQUITABLE RELIEF AS TO DEFENDANTS SAMEER LAKHANY, THE CREDIT SHOP, LLC, FIDELITY LEGAL SERVICES LLC, AND TITANIUM REALTY, INC.**

~~FILED UNDER SEAL~~

Judge: Hon. Cormac J. Carney
Courtroom 9B

    Plaintiff Federal Trade Commission ("FTC"), commenced this civil action on March 5, 2012, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009) ("Omnibus Act"), as clarified by the Credit Card Accountability



1   Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123

2   Stat. 1734, 1763-64 (May 22, 2009) ("Credit Card Act"), and amended by the Dodd-

3   Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203,

4   Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010) ("Dodd-Frank Act"), by filing

5   a Complaint for preliminary and permanent injunctive relief, rescission or

6   reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-

7   gotten monies, and other equitable relief for Defendants' acts or practices in

8   violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Mortgage

9   Assistance Relief Services Rule, 16 C.F.R. Part 322 ("MARS Rule") (effective

10  December 29, 2010, except for Section 322.5, which became effective on January

11  31, 2011), recodified as Mortgage Assistance Relief Services (Regulation O), 12

12  C.F.R. Part 1015 ("Regulation O") (effective December 30, 2011), in connection

13  with the marketing and sale of Mortgage Assistance Relief Services ("MARS"), and

14  applying for a temporary restraining order pursuant to Rule 65(b) of the Federal

15  Rules of Civil Procedure.

16          On March 5, 2012, the FTC filed a motion for an *ex parte* temporary

17  restraining with asset freeze and other equitable relief and the Court ordered the FTC

18  to appear before it, on March 7, 2012, in an *ex parte* hearing.  On March 7, 2012, the

19  FTC appeared before the Court, *ex parte*, and the Court entered a TRO, which

20  included an asset freeze as to the Corporate Defendants, appointment of a Temporary

21  Receiver, and other equitable relief ("First TRO").  As part of the First TRO, the

22  Court ordered the Defendants to appear before the Court on March 21, 2012, to show

23  cause, if any, why this Court should not enter a preliminary injunction, pending final

24  ruling on the Complaint, against the Defendants.

25          On March 14, 2012, the FTC filed a motion seeking to amend the First TRO

26  by:  (1) extending the asset freeze as to Defendant Lakhany; (2) requiring him to

27  provide financial statements in the form accompanying the FTC's proposed Order;

28

1  and (3) requiring all Defendants to provide an accounting of certain transfers of

2  assets.

3      The FTC and Defendants Sameer (a/k/a "Sammy") Lakhany, The Credit Shop,

4  LLC, Fidelity Legal Services LLC, and Titanium Realty, Inc., have stipulated and

5  agreed to entry of this Preliminary Injunction Order With Asset Freeze and Other

6  Equitable Relief as to Defendants Sameer Lakhany, The Credit Shop, LLC, Fidelity

7  Legal Services LLC, and Titanium Realty, Inc.  This Court, having considered the

8  Complaint, exhibits, memoranda, declarations, and other submissions of the parties,

9  and now being advised in the premises, hereby enters this Order:

## FINDINGS OF FACT

11      1.      This Court has jurisdiction over the subject matter of this case and over

12  the Stipulating Defendants (as defined herein), and venue in this district is proper;

13      2.      Stipulating Defendants waive all right to seek judicial review or

14  otherwise to challenge or contest the validity of their Stipulation hereto or to this

15  Preliminary Injunction Order With Asset Freeze and Other Equitable Relief as to

16  Defendants Sameer Lakhany, The Credit Shop, LLC, Fidelity Legal Services LLC,

17  and Titanium Realty, Inc.;

18      3.      The entry of this Preliminary Injunction Order With Asset Freeze and

19  Other Equitable Relief as to Defendants Sameer Lakhany, The Credit Shop, LLC,

20  Fidelity Legal Services LLC, and Titanium Realty, Inc. is in the public interest;

21      4.      This Order does not affect any of the terms and conditions of the TRO

22  entered March 7, 2012 as to remaining Defendants Precision Law Center LLC and

23  Precision Law Center, Inc.;

24      5.      Good cause exists for appointing a permanent receiver over the

25  Receivership Defendants (as defined herein); continuing the asset freeze imposed

26  pursuant to the temporary restraining order ("TRO") in this case; permitting the FTC

27  access to Defendants' business premises at the discretion of the Permanent Receiver;

28  and the other equitable relief ordered herein; and

6.     No security is required of any agency of the United States for issuance of a restraining order. Fed. R. Civ. P. 65.

## ORDER

## DEFINITIONS

For the purposes of this Order, the following definitions shall apply:

A.     "Assets" means any legal or equitable interest in, right to, or claim to, any real, personal, or intellectual property of any Defendants, or held for the benefit of any Defendants, wherever located, whether in the United States or abroad, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), cash, and trusts, including but not limited to any trust held for the benefit of any Defendant, any of the Individual Defendant's minor children, or any of the Individual Defendant's spouses, and shall include both existing assets and assets acquired after the date of entry of this Order.

B.     "Corporate Defendants" means The Credit Shop, LLC, Fidelity Legal Services LLC, Titanium Realty, Inc., Precision Law Center, Inc., and Precision Law Center LLC, and their successors, assigns, affiliates, or subsidiaries, and each of them by whatever names each might be known.

C.     "Defendants" means the Individual Defendant and all of the Corporate Defendants, individually, collectively, or in any combination, and each of them by whatever names each might be known.

D.     "Document" and "Electronically Stored Information" are synonymous in meaning and equal in scope to the usage of the terms in Rule 34(a) of the Federal Rules of Civil Procedure and include but are not limited to:

1.     The original or a true copy of any written, typed, printed, electronically stored, transcribed, taped, recorded, filmed, punched, or graphic matter

1    or other data compilations of any kind, including, but not limited to,

2    letters, email or other correspondence, messages, memoranda,

3    interoffice communications, notes, reports, summaries, manuals,

4    magnetic tapes or discs, tabulations, books, records, checks, invoices,

5    work papers, journals, ledgers, statements, returns, reports, schedules, or

6    files; and

7    2.    Any electronically stored information stored on any Blackberrys, flash

8    drives, personal digital assistants ("PDAs"), desktop personal computer

9    and workstations, laptops, notebooks, and other portable computers, or

10   other electronic storage media, whether assigned to individuals or in

11   pools of computers available for shared use, or personally owned but

12   used for work-related purposes; backup disks and tapes, archive disks

13   and tapes, and other forms of offline storage, whether stored onsite with

14   the computer used to generate them, stored offsite in another company

15   facility, or stored, hosted, or otherwise maintained offsite by a third-

16   party; and computers and related offline storage used by Defendants or

17   Defendants' participating associates, which may include persons who

18   are not employees of the company or who do not work on company

19   premises.

20   E.   "Electronic Data Host" means any person or entity in the business of storing,

21   hosting, or otherwise maintaining electronically stored information.

22   F.   "Financial institution" means any bank, savings and loan institution, credit

23   union, or any financial depository of any kind, including, but not limited to,

24   any brokerage house, trustee, broker-dealer, escrow agent, title company,

25   commodity trading company, or precious metal dealer.

26   G.   "Individual Defendant" or "Defendant Lakhany" means Sameer Lakhany,

27   a/k/a Sammy Lakhany, and any other names by which he might be known.

28

H.   "Material fact" means any fact that is likely to affect a person's choice of, or conduct regarding, goods or services.

I.   "Mortgage assistance relief product or service" means any product, service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

   1.   stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession;

   2.   negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees;

   3.   obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan;

   4.   negotiating, obtaining, or arranging any extension of the period of time within which the consumer may (i) cure his or her default on a dwelling loan, (ii) reinstate his or her dwelling loan, (iii) redeem a dwelling, or (iv) exercise any right to reinstate a dwelling loan or redeem a dwelling;

   5.   obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling; or

   6.   negotiating, obtaining, or arranging (i) a short sale of a dwelling, (ii) a deed-in-lieu of foreclosure, (iii) or any other disposition of a dwelling loan other than a sale to a third party that is not the dwelling loan holder.

1    The foregoing shall include any manner of claimed assistance, including, but not

2    limited to, auditing or examining a consumer's mortgage or home loan application

3    and offering to provide or providing legal services.

4    J.    "Person" means any individual, group, unincorporated association, limited or

5         general partnership, corporation, or other business entity.

6    K.    "Stipulating Defendants" means the Individual Defendant, The Credit Shop,

7         LLC, Fidelity Legal Services LLC, and Titanium Realty, Inc.; and their

8         successors, assigns, affiliates, or subsidiaries, and each of them by whatever

9         names each might be known.

10    L.    "Receivership Defendants" means The Credit Shop, LLC, Fidelity Legal

11        Services LLC, Precision Law Center, Inc., Precision Law Center LLC, and

12        Titanium Realty, Inc.; and their successors, assigns, affiliates, or subsidiaries,

13        and each of them by whatever names each might be known, provided that the

14        Permanent Receiver has reason to believe they are owned or controlled in

15        whole or in part by any of the Defendants.

16    M.    The words "and" and "or" shall be understood to have both conjunctive and

17        disjunctive meanings as necessary to make the applicable phrase or sentence

18        inclusive rather than exclusive.

19 **I.**

20 **PROHIBITED REPRESENTATIONS**

21      **IT IS THEREFORE ORDERED** that Stipulating Defendants and their

22    successors, assigns, officers, agents, servants, employees, and attorneys, and those

23    persons or entities in active concert or participation with any of them who receive

24    actual notice of this Order by personal service, facsimile transmission, email, or

25    otherwise, whether acting directly or through any corporation, subsidiary, division,

26    or other device, in connection with the advertising, marketing, promotion, offering

27    for sale or sale of any mortgage assistance relief product or service, are hereby

28

restrained and enjoined from falsely representing, or from assisting others who are falsely representing, expressly or by implication, any of the following:

    A.    that any Defendant or any other person:

        1.    generally will obtain for consumers mortgage loan modifications that will make consumers' payments substantially more affordable, or will help consumers avoid foreclosure;

        2.    as a result of a loan audit, generally will obtain for consumers mortgage loan modifications that will make consumers' payments substantially more affordable or help consumers avoid foreclosure;

        3.    are accredited non-profit organizations with superior techniques and qualifications for obtaining mortgage loan modifications that will make consumers' payments substantially more affordable;

        4.    generally will give refunds to consumers if the defendant fails to obtain a mortgage loan modification;

        5.    generally will obtain favorable mortgage concessions from consumers' lenders or stop foreclosure if consumers join mass joinder lawsuits initiated by the defendant or person;

    B.    The degree of success that any Defendant or any other person has had in performing any mortgage assistance relief service;

    C.    The nature of any Defendant's or any other person's relationship with any mortgage loan holder or servicer, or other secured or unsecured lender;

    D.    The amount of time it will take or is likely to take to obtain or arrange a renegotiation, settlement, modification, or other alteration of the terms of any secured or unsecured debt, including but not limited to the modification of any term of a consumer's home loan, deed of trust, or mortgage, including any recapitalization or reinstatement agreement;

E.     That any Defendant or any other person is affiliated with, endorsed or approved by the government;

F.     The refund policy of any Defendant or any other person, including but not limited to the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer; or

G.     The cost of any Defendants' service including that there will be no charge for all or a portion of such service.

## II.

## DISCLOSURES REQUIRED BY AND REPRESENTATIONS PROHIBITED BY MARS RULE (REGULATION O)

**IT IS FURTHER ORDERED** that Stipulating Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the telemarketing, advertising, marketing, promotion, offering for sale or sale of any good or service, are hereby restrained and enjoined from engaging in, or assisting others in engaging in, the following conduct:

A.     representing, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale or performance of any mortgage assistance relief service, that a consumer cannot or should not contact or communicate with his or her lender or servicer, in violation of 12 C.F.R. § 1015.3(a) (Dec. 30, 2011),

B.     failing to make the following disclosure in all general and consumer-specific commercial communications: "[Name of Company] is not associated with the government, and our service is not approved by the government or your lender," in violation of 12 C.F.R. § 1015.4(a)(1) & 1015.4(b)(2) (Dec. 30, 2011),

C.     failing to make the following disclosure in all general and consumer-

specific commercial communications: "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of 12 C.F.R. § 1015.4(a)(2) & 1015.4(b)(3) (Dec. 30, 2011),

      D.    failing to make the following disclosure in all consumer-specific commercial communications: "You may stop doing business with us at any time. You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer]. If you reject the offer, you do not have to pay us. If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services." For the purposes of this paragraph, the amount "you will have to pay" shall consist of the total amount the consumer must pay to purchase, receive, and use all of the mortgage assistance relief services that are the subject of the sales offer, including but not limited to, all fees and charges, in violation of 12 C.F.R. § 1015.4(b)(1) (Dec. 30, 2011),

      E.    failing, in all general commercial communications, consumer-specific commercial communications, and other communications in cases where any defendant or person has represented, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, that the consumer should temporarily or permanently discontinue payments, in whole or in part, on a dwelling loan, to place clearly and prominently, and in close proximity to any such representation the following disclosure: "If you stop paying your mortgage, you could lose your home and damage your credit rating," in violation of 12 C.F.R. § 1015.4(c) (Dec. 30, 2011).

### III.

### PROHIBITION ON COLLECTION OF ADVANCE FEES

**IT IS FURTHER ORDERED** that Stipulating Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those

persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the telemarketing, advertising, marketing, promotion, offering for sale or sale of any good or service, are hereby restrained and enjoined from asking for or receiving payment before consumers have executed a written agreement between the consumer and the loan holder or servicer that incorporates the offer obtained by Defendants.

## IV.

## PRESERVATION OF RECORDS AND TANGIBLE THINGS

**IT IS FURTHER ORDERED** that Stipulating Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents or records that relate to the business practices, or business or personal finances, of Defendants, or an entity directly or indirectly under the control of Defendants.

## V.

## DISABLEMENT OF WEB SITES

**IT IS FURTHER ORDERED** that, to the extent not already done pursuant to the TRO issued in this case, (1) any person hosting any Internet website for, or on behalf of, any Defendant, and (2) Stipulating Defendants and their successors, assigns, officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, shall:

A.    Do whatever is necessary to ensure that any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief service, and containing statements or representations prohibited by Section I of this Order cannot be accessed by the public;

B.    Prevent the destruction or erasure of any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief service, including but not limited to FreeFedLoanMod.org, HouseHoldRelief.org and MyHomeSupport.org, by preserving such website in the format in which they are maintained currently; and

C.    Notify in writing counsel for the FTC of any other Internet website operated or controlled by any Defendant not listed in Subsections A or B above.

**VI.**

**SUSPENSION OF INTERNET DOMAIN NAME REGISTRATIONS**

**IT IS FURTHER ORDERED** that, to the extent not already done pursuant to the TRO issued in this case, any domain name registrar shall suspend the registration of any Internet website used by Defendants for the advertising, marketing, promotion, offering for sale, sale, or provision of any mortgage assistance relief service, and containing statements or representations prohibited by Section I of this Order, including, but not limited to FreeFedLoanMod.org, HouseHoldRelief.org and MyHomeSupport.org, and provide notice to counsel for the FTC of any other Internet domain names registered by Defendants or their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendants who receive actual notice of this Order by personal service or otherwise.

# VII.

## ASSET FREEZE

**IT IS FURTHER ORDERED** that Stipulating Defendants and their officers, agents, servants, employees, and attorneys, and all persons or entities directly or indirectly under the control of any of them, including any financial institution, and all other persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile, email, or otherwise, each are hereby restrained and enjoined from directly or indirectly:

A.   Selling, liquidating, assigning, transferring, converting, loaning, hypothecating, disbursing, gifting, conveying, encumbering, pledging, concealing, dissipating, spending, withdrawing, or otherwise disposing of any funds, real or personal property, or other assets or any interest therein, wherever located, including any assets outside the territorial United States, that are:

1.   in the actual or constructive possession of any Defendant;

2.   owned or controlled by, or held, in whole or in part for the benefit of, or subject to access by, or belonging to, any Defendant; or

3.   in the actual or constructive possession of, or owned or controlled by, or subject to access by, or belong to, any corporation, partnership, trust or other entity directly or indirectly owned, managed or under the control of any Defendant;

B.   Opening, or causing to be opened, any safe deposit boxes titled in the name of any Defendant, or subject to access by any Defendant;

C.   Incurring charges on any credit card, stored value card, debit card or charge card issued in the name, singly or jointly, of any Defendant or any other entity directly or indirectly owned, managed or controlled by any Defendant;

D.   Obtaining a personal or secured loan; or

E.   Cashing any checks from consumers, clients, or customers of any Defendant.

F.    *Provided, however*, that Defendant Lakhany shall be permitted reasonable use of one (1) vehicle currently in his possession. He shall be liable for any diminution in value of the vehicle during the pendency of this Order beyond normal wear and tear. The vehicle identification number ("VIN") of such vehicle shall be provided to counsel for the FTC within 24 hours of entry of this Order.

**IT IS FURTHER ORDERED** that the funds, property, and assets affected by this Paragraph shall include: (a) all assets of each Defendant as of the time this Order is entered, and (b) those assets obtained or received after entry of this Order that are derived from the actions alleged in Plaintiff's Complaint. This Section does not prohibit transfers to the Permanent Receiver, as specifically required in Section XV (Delivery of Receivership Property), nor does it prohibit the Repatriation of Foreign Assets as specifically required in Section X of this Order.

## VIII.

## FINANCIAL STATEMENTS AND ACCOUNTING

**IT IS FURTHER ORDERED** that, each Stipulating Defendant, within three (3) business days of service of this Order, shall prepare and deliver to counsel for the FTC:

A.    For the Individual Defendant, a completed financial statement accurate as of the date of service of this Order upon such Defendant on the form of Attachment A to this Order captioned "Financial Statement of Individual Defendant."

B.    A completed financial statement for each Corporate Defendant accurate as of the date of service of this Order upon the Stipulating Defendant (unless otherwise agreed upon with FTC counsel) in the form of Attachment B to this Order captioned "Financial Statement of Corporate Defendant."

C.    For each Defendant, a completed statement, verified under oath, of all payments, transfers or assignments of funds, assets, or property worth more

than $2,500 in funds or other assets since January 1, 2010 by loan, gift, sale or other transfer. For each person to whom a transfer has been made, state the total amount transferred during that period. Such statement shall include: (a) the transferee's name, address and relationship; (b) the property transferred; (c) the aggregate value; and (d) the transfer date; and (e) the type of transfer.

D.    Stipulating Defendants shall state, for all Defendants, their: (1) total gross sales revenues for 2009, 2010, and 2011 to date; (2) their total gross expenses for 2009, 2010, and 2011 to date; (3) their gross operating expenditures on a monthly basis per category for 2009, 2010, and 2011 to date, including but not limited to payroll, advertising, marketing, utilities, and property leases; and (4) their gross capital expenditures for 2009, 2010, and 2011 to date.

E.    Stipulating Defendants shall provide, for all Corporate Defendants, a list of all officers and directors of the company and all other individuals or entities with authority to direct the operations of any Corporate Defendant or withdraw money from the account of any Corporate Defendant.

## IX.

## CONSUMER CREDIT REPORTS

**IT IS FURTHER ORDERED** that pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish to the FTC a consumer report concerning any Stipulating Defendant.

## X.

## REPATRIATION OF FOREIGN ASSETS

**IT IS FURTHER ORDERED** that, within five (5) business days following the service of this Order, each Stipulating Defendant shall:

A.    Provide the Permanent Receiver and counsel for the FTC with a full accounting of all assets, accounts, funds, and documents outside of the territory of the United States that are held either: (1) by Defendants; (2) for their benefit; (3) in

trust by or for them, individually or jointly; or (4) under their direct or indirect control, individually or jointly;

B.     Transfer to the territory of the United States all assets, accounts, funds, and documents in foreign countries held either: (1) by them; (2) for their benefit; (3) in trust by or for them, individually or jointly; or (4) under their direct or indirect control, individually or jointly; and

C.     Provide the FTC access to all records of accounts or assets of the Corporate Defendants and Individual Defendants held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records lodged with the FTC's TRO Application as Attachment C.

**IT IS FURTHER ORDERED** that all repatriated assets, accounts, funds, and documents are subject to Section VII of this Order.

## XI.

## NONINTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Stipulating Defendants are hereby restrained and enjoined from taking any action, directly or indirectly, that may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Section X of this Order, including, but not limited to:

A.     Sending any statement, letter, fax, email or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all assets have been fully repatriated pursuant to Section X of this Order; or

B.     Notifying any trustee, protector, or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all assets have been fully repatriated pursuant to Section X of this Order.

## XII.

## APPOINTMENT OF PERMANENT RECEIVER

**IT IS FURTHER ORDERED** that Thomas W. McNamara is appointed Permanent Receiver for the business activities of Receivership Defendants (as defined in Definition L herein) with the full power of an equity receiver. The Permanent Receiver shall be the agent of this Court and solely the agent of this Court in acting as Permanent Receiver under this Order. The Permanent Receiver shall be accountable directly to this Court. The Permanent Receiver shall comply with all laws and Local Rules of this Court governing receivers, including but not limited to Local Rules 66-1 through 66-5.1 and Local Rule 66-8.

## XIII.

## DUTIES AND AUTHORITY OF PERMANENT RECEIVER

**IT IS FURTHER ORDERED** that the Permanent Receiver is directed and authorized to accomplish the following:

A.      Assume full control of the Receivership Defendants by removing, as the Permanent Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Defendants, including any named Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

B.      Take exclusive custody, control, and possession of all assets, documents, and electronically stored information of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated. The Permanent Receiver shall have full power to divert mail and to sue for, collect, receive, take into possession, hold, and manage all assets and documents of the Receivership Defendants and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants. *Provided, however*, that the Permanent Receiver shall not attempt to collect or receive any amount from a consumer if the

Permanent Receiver believes the consumer was a victim of the unlawful conduct alleged in the complaint in this matter;

C.  Take all steps necessary to secure the business premises of the Receivership Defendants.  Such steps may include, but are not limited to, the following, as the Permanent Receiver deems necessary or advisable:

1.  serving and filing this Order;

2.  completing a written inventory of all Receivership assets;

3.  obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent, and all computer hardware and software passwords;

4.  videotaping and/or photographing all portions of the location;

5.  securing the location by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location; and

6.  requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Permanent Receiver with proof of identification, or to demonstrate to the satisfaction of the Permanent Receiver that such persons are not removing from the premises documents or assets of the Receivership Defendants;

D.  Conserve, hold, and manage all Receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers or to creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of assets;

E.   Liquidate any and all securities or commodities owned by or for the benefit of the Receivership Defendants as the Permanent Receiver deems to be advisable or necessary;

F.   Enter into contracts and purchase insurance as the Permanent Receiver deems to be advisable or necessary;

G.   Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

H.   Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Permanent Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

I.   Choose, engage, and employ, without prior approval of the Court, attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Permanent Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order.  The Permanent Receiver may engage the services of the law firm of which the Permanent Receiver is a member;

J.   Make payments and disbursements from the Receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Permanent Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Permanent Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

K.   Determine and implement measures to ensure that the Receivership Defendants comply with, and prevent violations of, this Order and all other

applicable laws, including, but not limited to, revising sales materials and implementing monitoring procedures;

L.  Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Permanent Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants, or that the Permanent Receiver deems necessary and advisable to carry out the Permanent Receiver's mandate under this Order;

M.  Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Permanent Receiver in his role as Permanent Receiver, or against the Receivership Defendants, that the Permanent Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants or that the Permanent Receiver deems necessary and advisable to carry out the Permanent Receiver's mandate under this Order;

N.  Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Permanent Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; *provided*, *however*, that the continuation and conduct of the business shall be conditioned upon the Permanent Receiver's good faith determination that the businesses can be lawfully operated at a profit using the assets of the receivership estate;

O.  Take depositions and issue subpoenas to obtain documents and records pertaining to the receivership estate and compliance with this Order. Subpoenas may be served by agents or attorneys of the Permanent Receiver and by agents of any process server retained by the Permanent Receiver;

P.  Open one or more bank accounts in the Central or Southern District of California as designated depositories for funds of the Receivership Defendants.  The Permanent Receiver shall deposit all funds of the

Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such account(s);

Q.   Maintain accurate records of all receipts and expenditures that he makes as Permanent Receiver; and

R.   Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency.

**IT IS FURTHER ORDERED** that the Permanent Receiver will be responsible for maintaining the chain of custody of all of Defendants' records in his possession, pursuant to procedures to be established in writing with the approval of the FTC.

## XIV.

## COOPERATION WITH PERMANENT RECEIVER

**IT IS FURTHER ORDERED** that:

A.   To the extent not already done pursuant to the TRO issued in this case, Stipulating Defendants, and their officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns, all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, shall fully cooperate with and assist the Permanent Receiver.  Such cooperation and assistance shall include, but not be limited to:

1.   Providing any information, not subject to attorney-client privilege, to the Permanent Receiver that the Permanent Receiver deems necessary to exercising the authority and discharging the responsibilities of the Permanent Receiver under this Order, including but not limited to, allowing the Permanent Receiver to inspect documents and assets, and

to partition office space. To the extent any item is withheld based on a claim of attorney-client privilege, the withholding party shall identify the nature of the item and the specific grounds for the claim of privilege.

2.  Providing any username or password and executing any documents required to access any computer or electronic files in any medium, including but not limited to electronically stored information stored, hosted or otherwise maintained by an electronic data host; and

3.  Advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Permanent Receiver.

B.  Stipulating Defendants and their officers, directors, agents, servants, employees, attorneys, successors, assigns, and all other persons or entities directly or indirectly, in whole or in part, under their control, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly:

1.  Transacting any of the business of the Receivership Defendants;

2.  Destroying, secreting, erasing, mutilating, defacing, concealing, altering, transferring or otherwise disposing of, in any manner, directly or indirectly, any documents, electronically stored information, or equipment of the Receivership Defendants, including but not limited to contracts, agreements, consumer files, consumer lists, consumer addresses and telephone numbers, correspondence, advertisements, brochures, sales material, sales presentations, documents evidencing or referring to Defendants' services, training materials, scripts, data, computer tapes, disks, or other computerized records, books, written or printed records, handwritten notes, telephone logs, "verification" or "compliance" tapes or other audio or video tape recordings, receipt books, invoices, postal receipts, ledgers, personal and business canceled

checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or property tax returns, photographs, mobile devices, electronic storage media, accessories, and any other documents, records or equipment of any kind that relate to the business practices or business or personal finances of the Receivership Defendants or any other entity directly or indirectly under the control of the Receivership Defendants;

3.   Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Permanent Receiver;

4.   Excusing debts owed to the Receivership Defendants;

5.   Doing any act or refraining from any act whatsoever to interfere with the Permanent Receiver's taking custody, control, possession, or managing of the assets or documents subject to this Receivership; or to harass or to interfere with the Permanent Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants; or to refuse to cooperate with the Permanent Receiver or the Permanent Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court;

6.   Filing, or causing to be filed, any petition on behalf of the Receivership Defendants for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, without prior permission from this Court;

7.   Failing to notify the Permanent Receiver of any asset, including accounts, of a Receivership Defendant held in any name other than the name of the Receivership Defendant, or by any person or entity other

than the Receivership Defendant, or failing to provide any assistance or information requested by the Permanent Receiver in connection with obtaining possession, custody, or control of such assets; and

8.     Failing to create and maintain books, records, and accounts which, in reasonable detail, accurately, fairly, and completely reflect the incomes, assets, disbursements, transactions and use of monies by the Defendants or any other entity directly or indirectly under the control of the Defendants.

## XV.

## DELIVERY OF RECEIVERSHIP PROPERTY

**IT IS FURTHER ORDERED** that, to the extent not already done  pursuant to the TRO issued in this case, immediately upon service of this Order upon them or upon their otherwise obtaining actual knowledge of this Order, or within a period permitted by the Permanent Receiver, Stipulating Defendants and any other person or entity, including but not limited to financial institutions and electronic data hosts, shall transfer or deliver access to, possession, custody, and control of the following to the Permanent Receiver:

A.     All assets of the Receivership Defendants;

B.     All documents and electronically stored information of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, records of ACH transactions, and check registers), client or customer lists, title documents and other papers;

C.     All assets belonging to members of the public now held by the Receivership Defendants;

D.     All keys, computer and other passwords, user names, entry codes, combinations to locks required to open or gain or secure access to any assets

or documents of the Receivership Defendants, wherever located, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property; and

E.    Information identifying the accounts, employees, properties, or other assets or obligations of the Receivership Defendants.

**IT IS FURTHER ORDERED** that, in the event any person or entity fails to deliver or transfer immediately any asset or otherwise fails to comply with any provision of this Section XV, the Permanent Receiver may file *ex parte* with the Court an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county to seize the asset, document, or other thing and to deliver it to the Permanent Receiver.

## XVI.

## COMPENSATION FOR RECEIVER

**IT IS FURTHER ORDERED** that the Permanent Receiver and all personnel hired by the Permanent Receiver as herein authorized, including counsel to the Permanent Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, the Receivership Defendants. The Permanent Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no later than May 7, 2012. The Permanent Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XVII.