

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

FEDERAL TRADE COMMISSION,

   Plaintiff,

    v.

SAMEER LAKHANY, *et al*.

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  SACV 12-00337-CJC(JPRx)

**STIPULATED FINAL JUDGMENT, ORDER FOR COMPENSATORY CONTEMPT RELIEF, AND MODIFIED ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AS TO DEFENDANT BRIAN PACIOS**

Judge:  Hon. Cormac J. Carney

Plaintiff Federal Trade Commission ("Commission" or "FTC") filed its Motion to Find Defendant Brian Pacios in Contempt ("Contempt Motion") (DE 167, Apr. 28, 2015) based on Defendant's violation of the Order entered by this Court on February 28, 2013 ("2013 Order").  The Commission and Defendant Brian Pacios stipulate to the entry of this Stipulated Final Judgment, Order for Compensatory Contempt Relief, and Modified Order for Permanent Injunction and Other Equitable Relief As to Defendant Brian Pacios ("Order") to resolve all matters in dispute in this contempt proceeding.  This Order also resolves all matters in dispute between the FTC and Defendant Brian Pacios ("Pacios") in the related case, *FTC v. Lake, et al.*, SACV 15-00585-CJC.

THEREFORE IT IS ORDERED as follows:

## **FINDINGS**

1.      This Court has jurisdiction over this matter.

2.      The Commission's Contempt Motion and subsequent filings allege that Defendant Brian Pacios violated the 2013 Order that bans Pacios from working on mortgage assistance relief products or services and prohibits him from misrepresenting any fact material to a consumer's decision to buy any product or service.

3.      As a result of Pacios' violative behavior, consumers suffered injury of Two Million, Seven Hundred and Forty-Two Thousand, Three Hundred Ninety-Six Dollars ($2,742,396.00).

4.      Specifically, Pacios, through his work with Chad Caldaronello, Justin Moreira, Derek Nelson, C.C. Enterprises, Inc. (also d/b/a HOPE Services, Trust Payment Center, and Retention Division), D.N. Marketing, Inc. (also d/b/a HAMP Services and Trial Payment Processing) (collectively "HOPE Services"), and Denny Lake (individually and also d/b/a JD United, U.S. Crush, Advocacy Division, Advocacy Department, Advocacy Agency, and Advocacy Program)

(collectively "Advocacy Department"), violated the 2013 Order's ban on working on mortgage assistance relief products or services and prohibition on misrepresenting any fact material to a consumer's decision to buy any product or service.

5.   Pacios worked with HOPE Services and Advocacy Department to operate a loan modification scam targeting homeowners facing foreclosure.

6.   Pacios reviewed and approved all of the mailers HOPE Services sent to consumers from the beginning of the scam in 2014 until the scam was stopped by law enforcement on April 16, 2015.

7.   HOPE Services' mailers included numerous material misrepresentations that were likely to mislead consumers acting reasonably under the circumstances.  Specifically, the mailers misrepresented that the entity sending the mailers was affiliated with the U.S. Government, implied that the consumer could obtain a government-backed loan modification by calling the number on the mailer, and failed to make the disclosures required by the Mortgage Assistance Relief Services ("MARS") Rule, 12 C.F.R. Part 1015.

8.   Pacios also operated a robo-calling device that telephoned consumers. The device gave a return number with a Washington, D.C. area code, despite the fact that he was not calling from Washington, D.C.  The message that callers heard when they received the call similarly made material misrepresentations, implying that the calls came from a government-affiliated entity that could provide a government-backed loan modification.  The phone message also failed to include the disclaimers required by the MARS Rule.

9.   When consumers called the numbers on the mailers or pressed certain numbers in response to the robo-calls, they were routed to HOPE Services, where Pacios, and people he directed, answered the phones.

10.   Pacios, and the people he directed at HOPE Services, falsely told

consumers that HOPE Services would obtain loan modifications for them that would make their payments substantially more affordable, would substantially lower their interest rates, or would help them avoid foreclosure.

11.     Pacios, and the people he directed at HOPE Services, falsely told consumers that HOPE Services was affiliated with, endorsed or approved by, or otherwise associated with the United States government, the Making Home Affordable program, the Department of Housing and Urban Development, or the Neighborhood Assistance Corporation of America.  They also falsely told consumers that HOPE Services communicated with specialized departments, divisions, or "higher-ups" at the maker, holder, or servicer of the consumer's dwelling loan.

12.     Pacios, and the people he directed at HOPE Services, then falsely told consumers that their applications for loan modifications were approved, and that the consumers need only submit some additional paperwork, as well as three trial mortgage payments, and in some instances, a "reinstatement fee."

13.     Consumers were falsely told that these payments were going to be held in their lenders' trust accounts to be applied to their loan, or fully refunded if the consumer did not receive the promised modification.  Pacios, and the people he directed at HOPE Services, instructed consumers to send only certified funds (either money orders or cashier's checks) made out to "Trust Payment Center," "Trial Payment Processing," or "Retention Division."  In some instances, consumers were also instructed to write a "/" and then the name of their lender next to these names, such as "Trial Payment Processing/Wells Fargo."

14.     Pacios, and the people he directed at HOPE Services, did not tell consumers that "Trust Payment Center," "Trial Payment Processing," and "Retention Division" were fictitious business names registered to private corporations that were controlled by Pacios and his associates.

15.     Pacios, and the people he directed at HOPE Services, falsely told consumers that, once they submitted their paperwork and first payment, their lender could no longer foreclose on their home.

16.     Hundreds of consumers were, in fact, misled by Pacios, and the people he directed at HOPE Services, and as a result, sent certified funds made out to "Trust Payment Center," "Trial Payment Processing," or "Retention Division."

17.     Pacios, and the people he directed at HOPE Services, did not send the consumers' modification applications to the consumers' lenders, did not forward consumer funds to any of the consumers' lenders, and did not have any reason to believe the consumers had been approved for a loan modification.

18.     Pacios admits (a) the allegations in the Commission's Contempt Motion, Memorandum in Support of that Motion, and the FTC's subsequent filings with this Court in this case; (b) the allegations set forth in the Complaint filed in the related case, *FTC v. Lake, et al.*, SACV 15-00585-CJC (DE 1, Apr. 14, 2015) and in the FTC's subsequent filings in that case; and (c) the findings herein.

19.     Pacios waives any claim that he may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action or the related case, *FTC v. Lake, et al.*, SACV 15-00585-CJC, through the date of this Order, and agrees to bear his own costs and attorney fees.

20.     Pacios waives any claim that he may have against the Commission, the Receiver in the related case, *FTC v. Lake, et al.*, SACV 15-00585-CJC, or their agents.

21.     Pacios and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

22.     This Order is in the public interest.

23.     The paragraphs of this Order shall be read as the necessary requirements of compliance and not as alternatives for compliance, and no

1    paragraph serves to modify another paragraph unless expressly so stated.

2        24.    All provisions of the 2013 Order remain in full force and effect with

3    respect to National Legal Network, Inc.

4        25.    All provisions of the 2013 Order remain in full force and effect with

5    respect to Brian Pacios, except as otherwise stated in this Order.

6                                **<u>DEFINITIONS</u>**

7        For the purposes of this Order, the following definitions apply:

8        A.    "**Assisting others**" includes:

9            1.    performing customer service functions, including receiving or

10   responding to consumer complaints;

11           2.    formulating or providing, or arranging for the formulation or

12   provision of, any advertising or marketing material, including any telephone sales

13   script, direct mail solicitation, or the design, text, or use of images of any Internet

14   website, email, or other electronic communication;

15           3.    formulating or providing, or arranging for the formulation or

16   provision of, any marketing support material or service, including web or Internet

17   Protocol addresses or domain name registration for any Internet websites, affiliate

18   marketing services, or media placement services;

19           4.    providing names of, or assisting in the generation of, potential

20   customers;

21           5.    performing marketing services of any kind including, but not

22   limited to, telemarketing;

23           6.    performing billing or payment services of any kind;

24           7.    acting or serving as an owner, officer, director, manager, or

25   principal of any entity.

26       B.    "**Credit-related financial product or service**" means any product,

27   service, plan, or program represented, expressly or by implication, to:

28

                                Page 6 of 21

1

2          1.      provide any consumer, arrange for any consumer to receive, or

3   assist any consumer in receiving, a loan or other extension of credit;

4          2.      provide any consumer, arrange for any consumer to receive, or

5   assist any consumer in receiving, credit, debit, or stored value cards;

6          3.      improve, repair, or arrange to improve or repair, any

7   consumer's credit record, credit history, or credit rating; or

8          4.      provide advice or assistance to improve any consumer's credit

9   record, credit history, or credit rating.

10         C.      **"Defendant"** means Brian Pacios.

11         D.      "**Federal homeowner relief or financial stability program**" means

12  any program (including its sponsoring agencies, telephone numbers, and Internet

13  websites) operated or endorsed by the United States government to provide relief

14  to homeowners or stabilize the economy, including but not limited to:

15         1.      the Making Home Affordable Program;

16         2.      the Financial Stability Plan;

17         3.      the Troubled Asset Relief Program and any other program

18  sponsored or operated by the United States Department of the Treasury;

19         4.      the HOPE for Homeowners program, any program operated or

20  created pursuant to the Helping Families Save Their Homes Act, and any other

21  program sponsored or operated by the Federal Housing Administration; or

22         5.      any program sponsored or operated by the United States

23  Department of Housing and Urban Development ("HUD"), the HOPE NOW

24  Alliance, the Homeownership Preservation Foundation, or any other HUD-

25  approved housing counseling agency.

26         E.      "**Financial Products**" means any product, service, plan, or program,

27  that involves the sale, purchase, transfer or insurance of assets or debt for a

28

consumer, including those provided by financial institutions, consumer finance companies, insurance companies, brokerages, investment managers, investment or financial advisors, or public-sector entities providing similar products and services; but excludes anything defined as either "credit-related financial product or service" or "secured or unsecured debt relief product or service" as defined by this Order.

F.      "**Person**" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

G.      "**Secured or unsecured debt relief product or service**" means:

1.      With respect to any mortgage, loan, debt, or obligation between a person and one or more secured or unsecured creditors or debt collectors, any product, service, plan, or program represented, expressly or by implication, to:

a.      stop, prevent, or postpone any mortgage or deed of foreclosure sale for a person's dwelling, any other sale of collateral, any repossession of a person's dwelling or other collateral, or otherwise save a person's dwelling or other collateral from foreclosure or repossession;

b.      negotiate, obtain, or arrange a modification, or renegotiate, settle, or in any way alter any terms of the mortgage, loan, debt, or obligation, including a reduction in the amount of interest, principal balance, monthly payments, or fees owed by a person to a secured or unsecured creditor or debt collector;

c.      obtain any forbearance or modification in the timing of payments from any secured or unsecured holder or servicer of any mortgage, loan, debt, or obligation;

d.      negotiate, obtain, or arrange any extension of the period of time within which a person may (i) cure his or her default on the mortgage, loan, debt, or obligation, (ii) reinstate his or her mortgage, loan, debt, or obligation, (iii)

redeem a dwelling or other collateral, or (iv) exercise any right to reinstate the mortgage, loan, debt, or obligation or redeem a dwelling or other collateral;

            e.     obtain any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling or other collateral; or

            f.     negotiate, obtain, or arrange (i) a short sale of a dwelling or other collateral, (ii) a deed-in-lieu of foreclosure, or (iii) any other disposition of a mortgage, loan, debt, or obligation other than a sale to a third party that is not the secured or unsecured loan holder.

The foregoing shall include any manner of claimed assistance, including auditing or examining a person's application for the mortgage, loan, debt, or obligation.

        2.     With respect to any loan, debt, or obligation between a person and one or more unsecured creditors or debt collectors, any product, service, plan, or program represented, expressly or by implication, to:

            a.     repay one or more unsecured loans, debts, or obligations; or

            b.     combine unsecured loans, debts, or obligations into one or more new loans, debts, or obligations.

        H.     "**Telemarketing**" means any plan, program or campaign which is conducted to induce the purchase a plan, program, product or service by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310.

## ORDER

## I.     BAN ON SECURED AND UNSECURED DEBT RELIEF PRODUCTS AND SERVICES (supersedes Section I of the 2013 Order)

        IT IS ORDERED that Defendant is permanently restrained and enjoined from advertising, marketing, promoting, offering for sale, or selling, or assisting

others in the advertising, marketing, promoting, offering for sale, or selling, of any secured or unsecured debt relief product or service.

## II. BAN ON CREDIT-RELATED FINANCIAL PRODUCTS AND SERVICES (supersedes Section II of the 2013 Order)

IT IS FURTHER ORDERED that Defendant is permanently restrained and enjoined from advertising, marketing, promoting, offering for sale, or selling, or assisting others in the advertising, marketing, promoting, offering for sale, or selling, of any credit-related financial product or service.

## III. BAN ON TELEMARKETING

IT IS FURTHER ORDERED that Defendant is permanently restrained and enjoined from engaging or participating in telemarketing, directly or through an intermediary, including, but not limited to, by consulting, brokering, planning, investing, marketing, or by providing customer service or billing or payment services.

## IV. PROHIBITED USE OF ALIASES

IT IS FURTHER ORDERED that Defendant, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any plan, program, product, or service, is hereby permanently restrained and enjoined from using an alias.

## V. PROHIBITION AGAINST MISREPRESENTATIONS RELATING TO ANY PRODUCTS OR SERVICES (supersedes Section III of the 2013 Order)

IT IS FURTHER ORDERED that Defendant, his officers, agents, employees, and attorneys, and all others in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or selling of any product, service, plan, or program, are permanently

restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication:

      A.     any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

      B.     that any person is affiliated with, endorsed or approved by, or otherwise connected to any other person, government entity, or any program, including but not limited to any public, non-profit, or other non-commercial program;

      C.     that the United States government or any federal homeowner relief or financial stability program has researched, monitored, vetted, or approved any product or service;

      D.     the nature, expertise, position, or job title of any person who provides any product, service, plan, or program;

      E.     the person who will provide any product, service, plan, or program to any consumer;

      F.     that any person providing a testimonial has purchased, received, or used the product, service, plan, or program;

      G.     that the experience represented in a testimonial of the product, service, plan, or program represents the person's actual experience resulting from the use of the product, service, plan, or program under the circumstances depicted in the advertisement;

      H.     that a consumer will receive legal representation;

      I.     any special connections or relationships with lenders or financial institutions; or

J.      any other fact material to consumers concerning any product, service, plan, or program.

**VI.     MONETARY JUDGMENT AND COMPENSATORY CONTEMPT RELIEF** (supplements Section VI of the 2013 Order)

IT IS FURTHER ORDERED that:

A.      Judgment in the amount of Two Million, Seven Hundred and Forty-Two Thousand, Three Hundred Ninety-Six Dollars ($2,742,396.00) is entered in favor of the Commission against Defendant, as compensatory contempt relief. Defendant is ordered to pay the FTC this amount immediately upon the entry of this Order.

B.      Defendant is also ordered to pay to the FTC the unpaid balance of the Judgment set forth in the 2013 Order, which is One Million, One Hundred Eighty-One Thousand, Seven Hundred Seventy-Four Dollars and Fifty-Four Cents ($1,181,774.54) plus all accrued interest, immediately upon the entry of this Order.

C.      Any entity or person, including Defendant or any financial institution, holding Defendant's frozen assets must transfer those assets to the Receiver in the related case, *FTC v. Lake, et al.*, SACV 15-00585-CJC, in accordance with the Receiver's instructions, within seven days of the entry of an Order in the related case modifying the asset freeze to permit such transfer.  Those assets include:

      1.  JP Morgan Chase account nos. XXXXXX4854, XXXXXX6050, XXXXXX6529, XXXXX6636, XXXXX9414, XXXXX0647, XXXXX9828; and

      2.  Comerica account nos. XXXXXX8344, XXXXXX8707.

After the Receiver's court-approved fees have been fully satisfied, the Receiver must transfer the balance to the Commission.

D.      Defendant shall take all steps necessary to assist in the transfer of all frozen assets, including those identified in Subsection C.  In the event it is

necessary to execute additional documents to transfer, liquidate, or assign Defendant's assets or any other assets surrendered under this Order, Defendant shall execute such documents within three days of a request from a representative of the Commission.

E.      Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

F.      The facts alleged in the FTC's Memorandum in Support of Its Motion to Find Defendant Brian Pacios in Contempt (DE 178-1, Apr. 29, 2015) and accompanying exhibits, and the FTC's subsequent filings related to the FTC's Contempt Motion will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.  In addition, the facts alleged in the FTC's Complaint in the related case, *FTC v. Lake, et al.*, SACV 15-00585-CJC (DE 1, Apr. 14, 2015) will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

G.      The facts alleged in the FTC's Memorandum in support of Its Motion to Find Defendant Brian Pacios in Contempt (DE 178-1, Apr. 29, 2015) and accompanying exhibits and the FTC's subsequent filings related to the FTC's Contempt Motion, establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.  In addition, the facts alleged in the FTC's Complaint in the related case, *FTC v. Lake, et al.*, SACV 15-00585-CJC (DE 1, Apr. 14, 2015) establish all

elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

H.     Defendant acknowledges that his Social Security Number, which Defendant previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

I.     All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendant's practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.  Defendant has no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

J.     The Commission may request any tax-related information, including tax returns and other filings, that Defendant has the authority to release.  Within 14 days of receipt of a written request from a representative of the Commission, Defendant must take all necessary steps (such as filing a completed IRS Form 4506 or 8821) to cause the Internal Revenue Service or other tax authority to provide the information directly to the Commission.

**VII.  CUSTOMER INFORMATION** (supersedes Section V of the 2013 Order)

IT IS FURTHER ORDERED that Defendant, his officers, agents, employees, and attorneys, and all others in active concert or participation with any

of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from directly or indirectly:

A.    disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, Social Security Number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the marketing or promotion of mortgage assistance relief products or services or debt relief products or services; and

B.    failing to destroy such customer information in all forms in their possession, custody, or control within 10 days after entry of this Order.

Provided, however, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

**VIII.  COOPERATION** (supersedes Section VIII of the 2013 Order)

IT IS FURTHER ORDERED that Defendant must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Contempt Motion or the Complaint in the related case, *FTC v. Lake, et al.*, SACV 15-00585-CJC (DE 1, Apr. 14, 2015).  Defendant must provide truthful and complete information, evidence, and testimony.  Defendant must appear for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon 5 days written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena.

**IX.    ORDER ACKNOWLEDGMENTS** (supersedes Section IX of the 2013 Order)

IT IS FURTHER ORDERED that Defendant obtain acknowledgments of receipt of this Order:

A.    Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.    For 20 years after entry of this Order, for any business that Defendant, individually or collectively with any other Defendant in this case or in the related case, *FTC v. Lake, et al.*, SACV 15-00585-CJC, is the majority owner or controls directly or indirectly, Defendant must deliver a copy of this Order and the 2013 Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives whose work relates to financial products or services; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.    For 20 years after entry of this Order, for any business that employs Defendant and sells or provides financial products, and for which Defendant is neither a majority owner nor directly or indirectly controls, Defendant must deliver a copy of this Order to at least one principal, officer, director, LLC manager, or LLC member of the business.  Delivery must occur within 7 days of entry of this Order for current employment.  For all others, delivery must occur before Defendant assumes his employment.  For purposes of this Subsection, a business "employs" Defendant if the business provides Defendant with compensation of any sort, directly or indirectly, in exchange for goods or services of any sort, regardless

of whether Defendant is considered an "employee," an "independent contractor," or otherwise.

D.     From each individual or entity to which Defendant delivered a copy of this Order pursuant to this Section, Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order that includes then-current contact information for the signatory, including the signatory's full name, physical address, telephone number, and email address.

**X.     COMPLIANCE REPORTING** (supersedes Section X of the 2013 Order)

IT IS FURTHER ORDERED that Defendant make timely submissions to the Commission:

A.     180 days after entry of this Order, and annually thereafter for 3 years, Defendant must submit a compliance report, sworn under penalty of perjury in which Defendant must:

1.     Identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant;

2.     Identify all of Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

3.     Describe the activities of each business, including the product, service, plan, or program offered, the means of advertising, marketing, promoting, and sales, and the involvement of any other Defendant in this case or in the related case, *FTC v. Lake, et al.*, SACV 15-00585-CJC;

4.     Describe in detail whether and how Defendant is in compliance with each Section of this Order;

5.     Provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission;

6.      Identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences;

7.      Identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which Defendant has any ownership interest; and

8.      Describe in detail Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.      For 20 years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Any designated point of contact;

2.      The structure of any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order;

3.      Name or residence address; or

4.      Title or role in any business activity, including any business for which Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28

U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin:  *FTC v. Sameer Lakhany* – Brian Pacios, X120014.

**XI.     RECORDKEEPING** (supersedes Section XI of the 2013 Order)

IT IS FURTHER ORDERED that Defendant must create certain records for 20 years after entry of the Order, and retain each such record for 5 years. Specifically, Defendant and any business that Defendant, individually or collectively with any other Defendant in this case or in the related case, *FTC v. Lake, et al.*, SACV 15-00585-CJC, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.     accounting records showing the revenues from all products, services, plans, or programs sold;

B.     personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.     records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.     all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.      a copy of each unique advertisement or other marketing material.

**XII.   COMPLIANCE MONITORING** (supersedes Section XII of the 2013 Order)

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order and the 2013 Order, including any failure to transfer any assets as required by this Order or the 2013 Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order and the 2013 Order, the Commission is authorized to communicate directly with Defendant.  Defendant must permit representatives of the Commission to interview any employee or other person affiliated with him who has agreed to such an interview.  The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing through its representatives as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with Defendant, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.      Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Defendant

1  pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C.

2  §1681b(a)(1).

3  **XIII.  RETENTION OF JURISDICTION**

4    **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of

5  this matter for all purposes of construction, modification, and enforcement of this

6  Order.

7

8    **IT IS SO ORDERED**, this 3rd day of November, 2015.

9

10

11  Dated: November 3, 2015

12            CORMAC J. CARNEY

13            UNITED STATES DISTRICT JUDGE